## William Dent v. G. W. Huntley, Appellant.

*Contract—Corporation—Director—Rescission of contract—Evidence.*

When a director of a corporation, having full authority to purchase for his company, and having explicitly in writing so purchased, sets up a rescission of the contract that he may sustain a sale to himself for the purpose of reselling the same property to the corporation, the burden is on him to establish the transaction by the clear preponderance of testimony, and further, to clearly show that he acted in good faith.

Argued May 3, 1897. Appeal, No. 514, Jan. T., 1896, by defendant, from judgment of C. P. Potter Co., June T., 1890, No. 97, entered upon report of referee. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Replevin to recover 3,400 hemlock saw-logs.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were the various findings of fact and conclusions of law of the referee, sufficiently stated in the opinion of the Supreme Court.

*G. A. Jenks,* with him *G. W. Huntley, Jr., C. L. Peck* and *L. B. Seibert,* for appellant.—Directors are but the agents and trustees of the company; they have power to act only for the interest of the company, and not against it: Densmore Oil Co. v. Densmore, 64 Pa. 50; Rice's App., 79 Pa. 204. Mr. Dent being a director of the company, and having made the contract in the company's name, the burden is on him to prove affirmatively his title to the logs, by the contract of June 8, 1888: Simons v. Vulcan Oil Co., 61 Pa. 221; Cunningham v. Smith, 70 Pa. 459.

Neither fraud, accident nor mistake was alleged to set aside the contract under consideration but, if even any of these grounds had been assumed or alleged, the evidence would not have been sufficient to submit to a jury: Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Jackson v. Payne, 114 Pa. 67; Phillips v. Meily, 106 Pa. 537; Bryant v. Stilwell, 24 Pa. 317.

*John Ormerod* and *H. C. Dornan*, with them *J. Newton Peck* and *Larrabee & Lewis*, for appellee.—Where what is conveyed by writing is in doubt, and depends upon parol evidence, the determination of what is included in the conveyance is a question of fact for the jury: Barnhart v. Riddle, 29 Pa. 92; McCullough v. Wainwright, 14 Pa. 171; Hall v. Benner, 1 P. & W. 402.

And the findings of fact of the judge sitting as a referee are as conclusive as the verdict of a jury: Jamison v. Collins, 83 Pa. 359; Lee v. Keys, 88 Pa. 175; Griffith v. Sitgreaves, 90 Pa. 161.

To constitute a delivery there must be not only an actual delivery at the place appointed, but it must have been made with an intent to deliver the property, which intent is to be manifested by acts and declarations of the vendor, which are facts for the consideration of the jury: Smyth v. Craig, 3 W. & S. 14; Susquehanna Boom Co. v. Finney, 58 Pa. 200; Lester v. McDowell, 18 Pa. 91.

OPINION BY MR. JUSTICE DEAN, October 11, 1897:

On March 22, 1890, the plaintiff replevied 3,400 hemlock saw logs on the banks of Sinnemahoning creek, in Potter county, of the value of about $3,000; the writ was served on defendant, and possession of the logs taken by the sheriff; the same day defendant gave bond, and the possession was restored to him; he appeared and pleaded non cepit and property. The parties referred the issue to Hon. T. A. Morrison, referee, under the special act of February 22, 1870, relating to Potter and Tioga counties, who found for plaintiff in the sum of $4,135; from the judgment entered on that finding the defendant appeals.

The logs had several marks, but may be divided, for purposes of this case, into two lots, those marked "H" known as Cobb's logs, and those marked "XX" known as Barclay logs. The plaintiff claim possession of the Cobb logs, under a contract of purchase with a partnership of the name of "Cobb Brothers," dated June 8, 1888. By this contract Cobb Brothers agreed to sell to William Dent, this plaintiff, and August Schwarzenbach, and their assigns, all the hemlock timber then growing upon lots No. 90, 91 and 31 of the Fox and Ross lands in Potter county, with right of ingress to cut and remove the same into

the South Fork of Sinnemahoning creek.    In consideration, Dent and Schwarzenbach agreed to pay Cobb Brothers $1.25 per thousand feet, Doyle's rule, when the timber was cut into merchantable logs and skidded; the price to be paid as follows : Cobb Brothers were indebted to Dent and Schwarzenbach by judgment in Potter county in the sum of $2,000, which was first to be deducted, and the balance of the stumpage to be paid in cash.

A second agreement between them was made the same day, by which Cobb Brothers agreed to do all the work preceding delivery; further, the length and quality of the logs was more particularly specified; still further, the point of delivery was thus particularly specified : "To be cut, skidded and banked in good shape on the South Fork of the Sinnemahoning creek, in or below the splash dam, in time for and before the first spring flood of 1889, and to be put afloat in said stream (by Cobb Brothers) when and in the manner directed by Dent and Schwarzenbach." In addition, Cobb Brothers were to furnish right of way in fork of Sinnemahoning to its mouth, and clear the stream to facilitate floating.

Dent and Schwarzenbach agreed that they would pay 75 cents of the cost of this work when the logs had been cut, skidded, marked and scaled; this to be paid monthly; further, to pay to Cobb Brothers $1.75 per thousand feet when the logs were banked, and 25 cents when put afloat.    It was also agreed that, if all the logs could not be put in by the spring flood of 1889, they should have the privilege of putting them in for the flood of 1890.    It will be noticed that stumpage and cost of delivery together amounted to $4.00 per thousand.    Months after the logs in dispute had been put in the stream and floated out, on November 28, 1889, Schwarzenbach, for the consideration of $1.00, by agreement in writing, assigned all his "interest in all contracts for the purchase of timber, standing or down and peeled and barked, thereon in which we (he and Dent) are interested together," to Dent.

Cobb Brothers had also sold logs to Barclay Brothers, and had delivered them in the Sinnemahoning above the mouth of the East Fork above the First Fork.    These logs, Barclay Brothers, by agreement in writing dated August 8, 1888, sold to Dent; the price to be $4.15 per thousand; quantity not speci-

fied, but from the amount of money stipulated for, was probably estimated at about one million feet.

The plaintiff admitted the logs in dispute under these contracts had been delivered to him as stipulated; he also alleged that, by a verbal agreement with the officers of the Consolidated Lumber Company, he had afterwards sold the same logs to the company, to be delivered by him in the First Fork below the mouth of the South Fork of the Sinnemahoning; but he further alleged that no delivery had been made by him to the company; that by the extraordinary flood of May 31, 1889, known as the Johnstown Flood, the logs had been swept from his possession down the stream, and had been wrongfully taken possession of by defendant, for the lumber company. The defendant claimed that the purchase from Cobb Brothers and Barclay Brothers was made by Dent for the lumber company, he acting as the agent of the company, and that the moment there was a delivery by the vendors under their contract to Dent, the right of possession at once vested in the lumber company. Further, that even if, on delivery by Cobb Brothers and Barclay Brothers under their contracts, there was a possession in Dent, yet by his alleged verbal contract of sale to the company there was a delivery by him of the logs in the stream to the company. It was claimed by defendant that the logs thus being the property of and in possession of the company, it, on December 24, 1889, made an assignment for the benefit of creditors to one John C. Zeller, who, on March 5, 1890, sold the logs in dispute at public sale to E. A. Irvine, who purchased for himself and G. W. Huntley, the defendant.

There was a great deal of evidence bearing on the questions of fact as to whether the purchase was made by Dent for the company, and whether there was an actual delivery by him under his alleged verbal sale. The learned referee found both questions against defendant, and we now have this appeal by him. Twenty-two errors are assigned to rulings on evidence, findings of fact and conclusions of law by the referee. It seems to us that the case must turn on the question raised by the ninth assignment, which alleges error in this finding of fact by the referee:

"To sustain the defendant's theory the logs in dispute must have been purchased for the company in the first instance, or

else Dent must have delivered the same.   Now we think the weight of the evidence established the fact that Dent bought the logs on his own account, agreeing to sell and deliver the same to the company, but that he made no delivery, and that he did not receive his pay for these logs.   Whatever delivery there was resulted from the Johnstown Flood, an extraordinary event, and surely the plaintiff Dent should lose none of his rights thereby, nor should the defendant Huntley profit by this unusual and unexpected occurrence."

For whom were the logs in dispute purchased?   It will be noticed that plaintiff founds his claim to the Cobb logs on the contracts of June 8, 1888.   But, ten days before this, on May 29, he, by written agreement, purchased the same logs for the Consolidated Lumber Company from the same parties to be delivered in the same stream.   That in this first transaction he was acting as the agent for the company he explicitly declares by the writing itself.   He was a director of the company, and authorized by it to act as its purchasing agent.   Plaintiff alleges that, before he made the contracts of June 8, following, he rescinded this contract made for the company.   But from whence came his authority to rescind?   There is no evidence that we can discover of precedent power or subsequent ratification.   Dent does not even allege that the company had knowledge of a hostile claim under the later contracts.   Having full authority to purchase for the company, and having explicitly in writing so purchased, surely, when he sets up a rescission, that he may sustain a sale to himself, for the purpose of reselling the same property to his principal, the burden is on him to establish the transaction by the clear preponderance of testimony, and to further clearly show he acted in good faith.

The only evidence relating to subsequent knowledge on the part of the company of a claim of property by Dent is that of plaintiff himself, who testifies that, "somewhere along in the summer of 1888," he sold these same logs to the company by a verbal contract with the president and superintendent.   The president is dead; the superintendent, although called by plaintiff as a witness, is not asked to corroborate him, and says nothing on the subject.

The reasonable interpretation of the three writings, that of May 29, in name of the company, and those of June 8, in names

of Dent and Schwarzenbach, manifestly is, that the two later ones were a mere elaboration in detail of the stipulations of the first; that, at the time, they were not intended by either the Cobb Brothers or Dent to abrogate the first, but to more specifically declare its provisions, that they might be more effectually enforced in the interest of both parties. And that this was the purpose, is, in substance, positively testified to by two of the Cobb Brothers. Further, the plaintiff's subsequent conduct is wholly inconsistent with a rescission of the first agreement. On November 21, 1889, he repurchased from the company by formal resolution of the board of directors, and a receipt embodying a contract, all the interest of the company in contracts made by Dent and Schwarzenbach for timber and logs not delivered. The logs delivered by Cobb Brothers are, by clear implication, excepted from this transfer; at the same time there is an implied assertion on part of the company of title to all logs already delivered, an assertion assented to by this plaintiff when he became a party to the transaction. There is much other evidence bearing out the same conclusion, and scarcely a scintilla inconsistent with it.

As to the Barclay logs, the letter of the superintendent of the company to plaintiff, of December 19, 1888, shows clearly that he purchased these logs for the company, and that it arranged to pay for them. Other evidence shows they were paid for in part by the company's note, and that, on January 2, 1889, it paid directly to Barclay Brothers the last payment of $1,460.95. In connection with this transaction, Dent wrote to the company a letter, in which occurs the following significant paragraph:

" As I understood my position with the company, they authorized me to buy logs for them, and are consequently bound by my contracts. If, however, they conclude that I am not competent, and intend to refuse me the funds to carry on jobs and fulfil said contracts, I would like to know it, and have a settlement at once and get out of the way."

We are of opinion the evidence shows beyond doubt the logs in dispute were purchased from Cobb Brothers and Barclay Brothers for the Consolidated Lumber Company, and were delivered to the company under its contracts; and, as under the assignment and sale, the title and right of possession passed to defendant, plaintiff cannot recover damages in this action.

As to the second question, assuming plaintiff had obtained title, was there a delivery by him to the company under the verbal sale alleged by him. It is unnecessary to answer it, in the view we take of the first.

The judgment is reversed, costs to be paid by appellee.